**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff–Appellant,**

v.

**ITHACA INDUSTRIES, INC.,**
**Defendant–Appellee.**

No. 87–2526.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 1, 1988.

Decided June 8, 1988.

Warren Robert Duplinsky (Charles A. Shanor, Gen. Counsel, Lorraine C. Davis, Associate Gen. Counsel (Acting), E.E.O.C., Washington, D.C., on brief), for plaintiff-appellant.

Robert Oliver King (Ogletree, Deakins, Nash, Smoak and Stewart, Greenville, S.C., on brief), for defendant-appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges, sitting en banc.

K.K. HALL, Circuit Judge:

Dannel Dean, the charging party in a civil action alleging religious discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, appeals a decision of the district court granting judgment for his former employer, Ithaca Industries. By a majority vote, a panel of the Court affirmed the judgment of the district court. *EEOC v. Ithaca Ind., Inc.,* 829 F.2d 519 (4th Cir.1987). Thereafter, a majority of the Court voted to reconsider the case en banc. A majority of the en banc Court has now voted to reverse the judgment of the district court for the reasons set forth below.

## I.

Dean began working for Ithaca at Gastonia, North Carolina, on July 23, 1979, on the second shift as a turning operator. Ithaca produced cloth for J.C. Penney, Nike, and Ocean Pacific at its Gastonia plant. On April 11, 1983, Dean was transferred to the first shift as a Morrison Machine Operator. From July 18, 1983, to January 16, 1984, he was on extended leave of absence due to a serious brain tumor. Upon his return, he was assigned to work as a dryer helper on the first shift.

Dean has been a member of the Church of God since 1977 and believes that he cannot work on Sunday because it would violate his religious beliefs. Dean made this belief clear to his supervisors and other Ithaca officials at the time of his initial employment and was told that Sunday work was strictly voluntary. During the first four years of his employment, Sunday work was not required.

In January, 1984, the plant's production demands became abnormally high which forced the plant to operate on eight Sundays that year. When Sunday work was necessary, the plant operated on a reduced staffing basis in order to allow as many people as possible to have Sunday off. The normal daily complement of workers on the first shift was approximately 25 people. On Sundays the shift was manned by a skeleton crew of 12 to 15 people.

Dean was asked by his supervisor, Andrew Cain, to work the first two operating Sundays in 1984, January 23 and February 19. He refused, but received no reprimand or criticism of any kind. On March 17, Cain ordered Dean to work the following day, which was a Sunday. Dean informed Cain that he could not work because of his religious beliefs. Dean was not told that his absence would be considered unexcused.

On March 19, Cain gave Dean a written warning identifying his failure to work the preceding day as an unexcused absence and stating that "[a]nother unexcused absence will result in termination." This was the first time Dean was made aware that Cain considered his inability to work on Sundays, because of his religious beliefs, an inappropriate reason for not working.

The next Sunday on which work was required was April 1. On Saturday, March 31, Cain approached Dean and instructed him to work the next day. Dean again informed Cain that he could not work because of his religious beliefs. Cain responded that, if Dean did not report for work, he should not return on Monday because he would be terminated. Dean did not report to work that Sunday; Cain worked in Dean's stead. Cain discharged Dean on April 2.

A civil action was filed by the Equal Employment Opportunity Commission ("EEOC") on December 16, 1985, alleging that Ithaca had violated §§ 701(j) and 703(a) of Title VII of the Civil Rights Act of 1964 by discharging Dean because he refused to work on his Sabbath. A bench trial was conducted on November 18 and 19, 1986. At the trial, several employees testified that they would have been available to work on March 18 and April 1 in Dean's place if they had been asked. However, Cain did not contact any of those employees to see if they would work for Dean. On December 3, 1986, the district court entered judgment in favor of the company, concluding that Ithaca had made no effort to accommodate Dean but that an absolute refusal to work on Sunday was so unreasonable on its face that no reasonable accommodation was possible. This appeal followed.

## II.

On appeal, the EEOC contends that the district court erred in holding that Ithaca had no duty to attempt to accommodate Dean's religious belief that he could not work on his Sabbath. Ithaca argues that the district court properly assessed its duty but that in any event the religious accommodation provisions of Title VII violate the First Amendment by promoting and advancing religion; discriminate against employees who do not adhere to religious tenets which prohibit work on a particular day; and result in excessive government entanglement in religion. We disagree with the district court and find no merit in Ithaca's constitutional argument.

Section 703(a)(1) of the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e–2(a)(1), makes it an unlawful employment practice for an employer to discriminate against an employee on the basis of his or her religion. In 1972, an amendment to Title VII, § 701(j), was enacted with the stated purpose to protect Sabbath observers whose employers fail to adjust work schedules to fit their needs.[1] The Act thus requires that an employer, short of undue hardship, make reasonable accommodations to the religious needs of its employees. It is also clear that the burden is on the employer to offer this accommodation.

The district court's conclusion that unless Dean was willing to compromise his religious belief by agreeing to work Sundays on some occasions, Ithaca had no duty to attempt to accommodate the belief turns the statute on its head. It improperly places the burden on the employee to be reasonable rather than on the employer to attempt accommodation. Section 701(j) clearly anticipates that some employees will absolutely refuse to work on their Sabbath and that this firmly held religious belief requires some offer of accommodation by employers.

The district court found, as a matter of fact, that Ithaca had made no specific effort to accommodate Dean. This absolute lack of effort at accommodation by the employer distinguishes this case from our previous case of *Jordan v. North Carolina Nat'l Bank*, 565 F.2d 72 (4th Cir.1977), and the Supreme Court's decision in *TWA v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). Appellee's continued reliance on these decisions is therefore misplaced.

In *Jordan*, a prospective employee demanded that she be guaranteed that she would never have to work on her Sabbath if she were to accept employment. There was evidence presented that the employer made some offers of accommodation to Jordan which she refused.[2] This Court subse-

---

1. Section 701(j) as codified in 42 U.S.C. § 2000e(j), provides that

    The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue

    hardship on the conduct of the employer's business.

2. The employment manager for the bank where Jordan sought employment told her that they would try to accommodate her and they had never had a problem with that before. In fact, the bank was already accommodating one employee. Furthermore, the bank had even sug-

quently ruled that any further accommodations would constitute an undue hardship.[3]

The Supreme Court in *Hardison* held that the employer, TWA, could not reasonably accommodate the employee's refusal to work on his Sabbath without undue hardship. TWA, however, made several efforts to accommodate the employee. Job swaps, change of days off, and shift transfers were all attempted before TWA concluded that any further accommodation would create an undue hardship.

It is true that in this case Ithaca did demonstrate an effort to accommodate *all* their employees when Sunday work was assigned.[4] These accommodations, however, were clearly not for reasons of religion, nor were they specifically aimed at addressing Dean's beliefs. In addition, Ithaca made no effort to accommodate Dean by any of the methods suggested by the guidelines in the regulations.[5] 20 C.F. R. 1605.2(d)(1)(i). We therefore conclude that Ithaca did violate the Civil Rights Act by discriminating against Dean.

### III.

■ Ithaca contends that the religious accommodation provisions of Title VII violate the First Amendment of the Constitution. The district court declined to reach this issue since it decided the case on other grounds. Assuming that the question is before us, we find no merit in Ithaca's constitutional challenge. Ithaca concedes

that its argument has been rejected by other courts but argues that if this issue reached the Supreme Court, it would find § 701(j) unconstitutional. We disagree. Every court of appeals that has addressed this issue has held that § 701(j) does not violate the First Amendment. *E.g., Protos v. Volkswagen,* 797 F.2d 129 (3rd Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *McDaniel v. Essex International Inc.,* 696 F.2d 34 (6th Cir. 1982). We now join these circuits in holding that § 701(j) passes muster under the Supreme Court's three-prong test for constitutionality. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). We are convinced that: (1) § 701(j) clearly has a secular purpose—the elimination of discrimination in the workplace; (2) it has the primary secular effect of preserving the equal employment opportunities of those employees whose moral scruples conflict with work rules; and (3) there is no excessive government entanglement. For these reasons, we conclude that § 701(j) does not violate the First Amendment.

### IV.

For the foregoing reasons, we reverse the judgment of the district court and remand for determination of appropriate relief.

**REVERSED AND REMANDED.**

---

gested employment on a trial basis to ascertain if there would be a problem. However, Jordan rejected these offers of accommodation.

3. To the narrow extent that *Jordan* can be read to say that an absolute refusal to work on the Sabbath is beyond accommodation, it is expressly overruled.

4. According to evidence adduced at trial, when selecting persons to work on Sunday, Cain would first ask for volunteers from his shift. If there were not enough volunteers to fill all the needed positions, Cain would instruct various employees from his shift to work. Before directing any employee to work on Sunday, Cain would, in an effort to be fair, consider whether the employees had worked other Sundays and how many hours they had worked the previous week. He would also consider whether an employee was qualified for the position he needed

to fill. He did not look to other shifts to fill the positions. At the times when he ordered reluctant employees to work on Sunday, Cain suggested that the employee try to find a qualified substitute. Cain never suggested this option to Dean. Although the company had a bulletin board for notices of import to employees, it did not utilize the board to obtain Sunday volunteers, nor would it permit employees to post their own notices in an attempt to secure replacements.

5. The regulations set out the following as examples of some means of accommodating religious practices: (a) the use of voluntary substitutes with substantially similar qualifications by publicizing policies, promoting an atmosphere in which substitutions are favorably regarded and providing a central file or bulletin board for matching substitutes; and (b) flexible scheduling by means of floating or optional holidays.

**120**

WILKINSON, Circuit Judge, concurring:

I concur in Judge Hall's fine opinion. I agree, for reasons noted in his opinion, that the employer in this case could have done more to accommodate Dean's religious beliefs without undue hardship to itself.

I write only to emphasize that the statutory terms "reasonably accommodate" and "undue hardship" are variable ones. 42 U.S.C. § 2000e(j). The fact that Sunday work was temporary here should not obscure the fact that many enterprises must regularly operate on Sundays and other days of religious observance. Hospitals must serve the sick every day, and airlines must attempt to maintain safe and prompt flight schedules. The dangers police and fire departments were established to combat do not disappear on Sundays or any other day.

The Supreme Court emphasized in *Hardison* that employers are not required to abandon seniority systems or to incur substantial costs in order to satisfy the requirements of § 701(j). 432 U.S. at 83–84, 97 S.Ct. at 2276–77. Nor, in my judgment, does that statute require an employer to jeopardize safe and effective service to the public. As Judge Hall notes in footnotes 4 and 5 of his opinion, there were options available to the employer here that did not involve such costs or risks, and for that reason I concur in his opinion.

WILKINS, Circuit Judge, dissenting:

The district court reached its decision relying on a 10–year-old precedent of this court, *Jordan v. North Carolina Nat'l Bank*, 565 F.2d 72 (4th Cir.1977) (rehearing and rehearing *en banc* denied). The majority holds that "[t]o the narrow extent that *Jordan* can be read to say that an absolute refusal to work on the Sabbath is beyond accommodation, it is expressly overruled." I would affirm on the basis of *Jordan*, but, since the majority now effectively over-

rules *Jordan*, I would remand to the district court.

**I.**

In *Jordan*, a prospective employee explained to the company's personnel interviewer that she "would not work on Saturdays [her Sabbath]," 565 F.2d at 74, and she would not accept a job unless she received a "guarantee" that she would not be asked to work on Saturdays. *Id.* at 75. The employer responded that "we would certainly try to accommodate [her] ... but we couldn't give her a formal binding guarantee." *Id.* The only effort by the employer to accommodate was an offer, summarily rejected by the employee, of work on a "trial basis, to ascertain if actually there was a problem of work on her Sabbath." *Id.* at 76.

The court in *Jordan* concluded that "Jordan's prerequirement on its face was so unlimited and absolute in scope—*never* to work on Saturday—that it speaks its own unreasonableness and [is] thus beyond accommodation," *id.*, and further noted that acceding to Jordan's demands would obligate the employer to do the same for all employees, constituting an "undue hardship" under *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 n. 15, 97 S.Ct. 2264, 2277 n. 15, 53 L.Ed.2d 113 (1977).

**II.**

As in *Jordan*, employee Dean "just couldn't compromise on the Sunday work question," declaring "I just don't work on Sundays. It's against what I believe in." As found by the district court, these views were purely personal to Dean at the time of his refusal to work, rather than a reflection of adherence to the specific teachings of his church.[1] Although the majority concludes "Dean made [his] belief clear to his supervisors and other Ithaca officials at the time of his initial employment," Dean's testimony does not support this.[2]

---

1. At his deposition Dean testified that, as far as he knew, his church did not "take a position one way or the other on Sunday work." When asked if his beliefs "[were] strictly personal," he answered that they were.

2. It is uncontested that Dean began working at Ithaca in 1979 and that he was never asked to work on Sunday by Ithaca prior to 1984. At trial Dean was asked when he told his supervisor, Andy Cain; the plant manager, James Hall;

It is undisputed that during the course of most of Dean's tenure with his employer, Sunday labor was not requested. However, in 1984 increased production demand required operation of the plant on some Sundays. When work on Sunday was necessary, the supervisors initially asked for volunteers. If there were not enough volunteers, employees were directed to work on Sunday. Dean was requested to work on Sunday on four occasions between January 22 and April 1. He refused on each occasion, telling his supervisor on the first occasion that he "had out of town guests coming in," and on the second occasion that he "had other plans." On all four occasions a fellow employee or his supervisor worked in his place.

### III.

The majority also states that the district court concluded that Ithaca "made no effort to accommodate Dean." While the district court did state under its "Conclu-

sions of Law" that Ithaca made no offer of accommodation,[3] it did so in reliance on the precedent of *Jordan* which required nothing further after it was established that Dean absolutely refused to work on Sunday regardless of the circumstances.

A review of the record demonstrates that the employer attempted to accommodate not only Dean in the exercise of his religious beliefs, but other employees in the exercise of their beliefs as well. The very process by which Dean's supervisor, Andy Cain, approached employees about Sunday work reflected his concern for balancing Ithaca's economic needs against the workers' religious practices and beliefs, as well as their need for time off from the job. When work on Sunday was necessary to meet production requirements, he first sought volunteers and, if there were insufficient volunteers, he approached individuals and instructed them to work. Those selected were chosen on a rotating basis to

and the department manager, Arnold Longmire, of his beliefs regarding Sunday work.
He stated that he told Mr. Cain in 1983:
Q. That's Andy Cain?
A. Yes.
Q. Do you remember when you told him about your religious beliefs?
A. It was soon after I came on first [shift].
Q. 1983?
A. Yes.
He stated that he told Mr. Hall in 1981:
Q. You ever tell Mr. James Hall?
A. Yes.
Q. About your religious beliefs?
A. Yes.
Q. And what did you tell him?
A. I told him, I said, "I just don't work on Sundays. It's against what I believe in."
Q. When did you inform Mr. Hall of your beliefs?
A. It was somewhere around '81, soon after he arrived.
When asked if he told Mr. Longmire of his beliefs Dean stated, "I don't remember if I told him or not."
In his testimony Dean named no other Ithaca officials to whom he told his beliefs about Sunday work when initially hired. There is a statement in his complaint to EEOC that he told the personnel manager, John Booth, of his beliefs prior to employment. Neither Dean nor Booth testified regarding this alleged conversation.

3. In its order the district court made the following findings of fact as to the issue of accommodation by the employer:

(14) If Cain was unable to obtain a sufficient number of volunteers for the specific jobs which needed to be filled on a particular Sunday, he would instruct certain employees to work on Sunday. Before directing any employee to work on Sunday, Cain would consider whether the employee had worked on a previous Sunday, or Sundays, how many hours he had worked during the week, and whether the employee could do the particular job which was required. *This was out of accommodation to all employees including Dean.* (Emphasis added.)
. . . .
The Court, therefore, finds that there was no way for the Defendant to accommodate Dean except to allow him every Sunday off and at the same time require all the other employees to work on Sunday at one time or another, when they were needed.
The language of the district court order upon which the majority concludes that "[t]he district court found, as a matter of fact, that Ithaca had made no specific effort to accommodate Dean," is set forth as follows:
(5) If, as in most cases, the employer had offered an accommodation to Dean, the question for the Court would be whether the proposed accommodation was reasonable. The Defendant here had not offered an accommodation to Dean, because Dean absolutely refused to work on any Sunday or at any time on a Sunday.

avoid repeated Sunday work by the same employees. Other considerations included the number of hours worked by an employee during the preceding week and particular job skills. All employees on Dean's shift worked on Sunday on at least one occasion in 1984, except Dean.[4]

Under 42 U.S.C.A. § 2000e(j) (West 1981), an employer is only required to reasonably accommodate an employee's, or prospective employee's, religious practices to the extent it does not work an undue hardship on the conduct of the employer's business.

I would remand to the trier of fact for consideration of the testimony and evidence in light of the majority's pronouncement overruling *Jordan.*

Judge WIDENER and Judge CHAPMAN have asked to be shown as joining in this separate opinion.

---

**4.** Cain's testimony detailed the selection process and also established that Dean's absence worked economic hardship on Ithaca. Finally, Cain provided for other employees who offered some middle ground for accommodation to attend religious services.