21 F.3d 1112
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION Plaintiff-Appellant,
v.
HANSON-LORAN CO. Defendant-Appellee.
 No. 93-15058.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 15, 1994.
Decided March 25, 1994.
 
 Before: D.W. NELSON and BEEZER, Circuit Judges, and LETTS,* District Judge.
 MEMORANDUM**
 The Equal Employment Opportunity Commission ("EEOC") filed this action in federal district court on January 10, 1992, alleging that Hanson-Loran Co. violated the anti-discrimination provisions of Title VII when it fired employee James Populo for refusing to work on his Sabbath. On October 21, 1992, the district court issued an order granting Hanson-Loran's motion for summary judgment. The EEOC filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 FACTUAL SUMMARY
 Populo is a member of a sabbatarian Christian faith, the Worldwide Church of God, and observes a day of rest each week from sundown on Friday to sundown on Saturday. In late 1985, he began working at the Phoenix, Arizona sales office of Hanson-Loran, a manufacturer of specialty chemicals for supermarket, janitorial, and automotive businesses. The Phoenix office is staffed by four employees. When he was interviewed for the job, Populo informed Hanson-Loran that he would not be able to work on his Sabbath and other holy days, and was told that this limitation would not be a problem. In 1987, Populo was promoted to sales manager for the Phoenix office. Among the clients that Populo pursued in his new role was the Safeway supermarket chain, represented by Floyd Diaz.
 The series of events that gave rise to this litigation began on Friday, October 21, 1988, when Diaz called Populo's immediate supervisor, Justin McCarthy, and asked McCarthy to arrange a last-minute floor cleaning demonstration at a Safeway store that evening. The local Safeway officials apparently were expecting a visit from Safeway executives the following morning, and intended to spend the entire night getting the store into shape. The parties' descriptions of the significance of the October 21 floor cleaning demonstration, and of the exchanges between Populo and his supervisors concerning his attendance at the demonstration, differ sharply.
 Hanson-Loran claims that, because of the upcoming visit of the Safeway VIPs, the floor cleaning demonstration provided a "once in a lifetime" opportunity to get the Safeway account, and that, although the demonstration itself went well, Populo's absence undermined Hanson-Loran's efforts to win the Safeway account. Populo, on the other hand, testified that although Hanson-Loran was asked to assist Safeway employees in preparing the floors, the work that night provided no opportunity for a sales presentation--he testified that product demonstrations and sales promotion, although related, are distinct activities. Populo further testified that although he met with Diaz on numerous occasions in early 1988 and frequently had done floor cleaning demonstrations at Safeway stores and had made sales presentations in an attempt to persuade Diaz to buy Hanson-Loran products, his attendance at the October 21 demonstration could not have been decisive because he had been taken off the Safeway account several months previously. Populo also testified that although Safeway was interested in getting its floor into shape for its visitors, Hanson-Loran supervisors already knew that Safeway was no longer seriously considering switching to Hanson-Loran products.
 Justin McCarthy testified that, after informing Populo that he must attend the last-minute demonstration on October 21, he offered Populo the option of coming to the demonstration only long enough to make the sales presentation. McCarthy reported that Populo flatly refused. McCarthy also testified that he sought to find a replacement for Populo from the California office, but that no one was available. Populo, on the other hand, testified that he was asked only to assist in the stripping and cleaning of the floors and never was asked to do a sales presentation. Populo claimed that, as he had done on earlier occasions, he offered to pay the wages of the additional temp or two that would be needed to replace him.
 Hanson-Loran Vice President Dale Cullop, based in California, who was telephoned by Populo the evening of the floor cleaning demonstration, testified that Populo was adamant about not working, and that this left him no choice but to fire Populo. Populo, however, testified that Cullop had a policy that when temps were hired for a job, all local employees had to attend as well, regardless of their religious obligations, and that, on occasions in which Cullop was not involved as a decisionmaker, Populo had been accommodated. Populo reported that when Cullop pressured him to attend the October 21 demonstration, Cullop told him that the issue was not the business importance of the event, but his compliance with company policy. Populo testified that Cullop verbally attacked him: "[H]e went on stating several times that religion is all in the head, it's not important, that you can worship chicken heads if you want to, go around cutting off chicken heads and worship them if you want to. He said religion is not a valid reason to release me from my duties." Populo further claimed that although his religion does not absolutely prohibit him from working on the Sabbath, and allows for an exception when the "ox is in the ditch," the October 21 floor cleaning demonstration presented no such emergency situation.
 The district court, after reciting facts showing that Hanson-Loran had accommodated Populo's beliefs on several previous occasions and that McCarthy had tried but failed to locate a suitable replacement for him on the night of the demonstration at Safeway, concluded that Hanson-Loran had made reasonable efforts to accommodate Populo, and, on this basis, granted summary judgment for the company.
 ANALYSIS
 "We review the district court's grant of summary judgment de novo. We affirm if the record, read in the light most favorable to the nonmoving party, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 613 (9th Cir.1988), cert. denied, 489 U.S. 1077 (1989).
 We analyze Title VII religious discrimination claims under a two-part test. "First, the employee must establish a prima facie case of religious discrimination.... [A]fter the plaintiff has made out a prima facie case, the burden shifts to the employer 'to prove that [it] made good faith efforts to accommodate [the employee's] religious beliefs and, if those efforts were unsuccessful, to demonstrate that [it was] unable reasonably to accommodate his beliefs without undue hardship.' " Id. at 614 (emphasis added) (quoting Anderson v. General Dynamics Convair Aerospace Div., 589 F.2d 397, 401 (9th Cir.1978), cert. denied, 442 U.S. 921 (1979)). See also 42 U.S.C. Sec. 2000e-2(a)(1) (requiring employers reasonably to accommodate the religious observances and practices of their employees unless they can demonstrate that they are "unable to [do so] without undue hardship on the conduct of [their] business"). Here, there is no dispute that the EEOC carried its burden of establishing a prima facie case of discrimination,[1] and the only question before us is whether the district court properly concluded that the record contains no genuine issue of material fact concerning whether Hanson-Loran reasonably accommodated Populo.
 We first note that the district court appears to have applied the wrong standard in evaluating the claim. In its three-page opinion, the district court bases it decision on its conclusion that Hanson-Loran made "reasonable efforts" to accommodate Populo. Although it is true that an employer satisfies its Title VII obligations when it offers an accommodation that the employee concedes is reasonable, even if it is not the accommodation that the employee would prefer, see Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986) (holding that where the employee acknowledges that the employer has offered a reasonable accommodation, "the employer need not further show that ... the employee's alternative would result in undue hardship"), the EEOC here makes no such concession. Indeed, it contends that Hanson-Loran's efforts did not resolve Populo's religious conflict, and emphasizes that Populo was fired when he failed to appear for work on his Sabbath.
 In this circuit, where the employer's efforts do not remove the employee's religious conflict, the employer must show that it could not have accommodated the employee without "undue hardship." See EEOC v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir.1989) (stating that where the employer does not offer an accommodation, "the employer must accept the employee's proposal or demonstrate that the proposal would cause the employer undue hardship"); Townley, 859 F.2d at 615 (holding that when "[the employer's] proposed accommodation does not eliminate the employee's religious conflict, the employer must accept the employee's proposal or demonstrate that the proposal would cause the employer undue hardship"); APWU v. Postmaster Gen., 781 F.2d 772, 776 (9th Cir.1986) (holding that when the employer's effort at accommodation "is viewed by the worker as inadequate, the question becomes whether the further accommodation requested would constitute 'undue hardship' "); Anderson, 589 F.2d at 401 (same). Accordingly, although the evidence that Hanson-Loran had accommodated Populo in the past and had sought replacements for him on October 21 is relevant, it is not dispositive of the Title VII claim.
 Although Hanson-Loran concedes that the "undue hardship" inquiry is the proper inquiry for resolution of this dispute, and although Hanson-Loran acknowledges that the district court made no mention of undue hardship in its opinion, Hanson-Loran contends that the district court should be found implicitly to have made a finding of undue hardship. In the alternative, Hanson-Loran argues that the evidence establishes undue hardship as a matter of law. We disagree, and conclude that there exists a genuine issue of material fact as to the existence of undue hardship.[2]
 Although there is evidence in the record supporting Hanson-Loran's position that it had a pressing business need to have Populo make a sales presentation at the floor cleaning demonstration on the night of October 21, 1988, the evidence of hardship is contradicted by Populo's testimony. Hanson-Loran's position is that although it had accommodated Populo's religious observances in the past, it could not do so this time because of the short notice, and because Populo services were essential if Hanson-Loran was to have any chance of securing the Safeway account. Hanson-Loran emphasizes that its Phoenix office has only four employees and that employee flexibility is a practical necessity. Hanson-Loran further contends that it had to hire temps and suffered lost business opportunities on account of Populo's absence, and cites Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977), for the proposition that even a de minimis increase in the cost of doing business can constitute "undue hardship."
 In his testimony, however, Populo contests each of Hanson-Loran's central contentions. Populo testified that: (1) Hanson-Loran's success or failure in obtaining the Safeway account did not depend on his presence at the October 21 demonstration, and his supervisors knew it; (2) although Populo was told he must assist in stripping the floors at the demonstration, he never was asked to do a sales presentation, and, in fact, there was no opportunity for a sales presentation that night; (3) Populo had been taken off the Safeway account several months previously, and did not know the people involved; (4) at least two other Hanson-Loran employees present the night of the floor cleaning had done demonstrations without Populo before; (5) although Hanson-Loran had to hire temporary workers to complete the job, it would have done so regardless of Populo's participation, and, in any case, Populo at least twice offered to pay the wages of any worker hired to take his place that night; and (6) the requirement that Populo be present was not a reasonable response to a business emergency, but was the product of Cullop's inflexible policy against accommodation.
 Populo claims that Cullop had a policy that whenever Hanson-Loran had to fly employees in from other offices, or "spend[ ] money to hire temps," all local employees must work. Populo testified that when a similar last-minute demonstration at a Safeway store became necessary several months earlier, and Cullop apparently was not involved in the decisionmaking, Populo was not required to attend even though temps were hired to help with the work. Populo testified that when he was first asked by McCarthy to attend the October 21 demonstration, he told McCarthy of his objection, and McCarthy responded: "We're hiring extras. You know how Dale [Cullop] feels. You will be there." Populo says that when he repeated his objection to working on his Sabbath, McCarthy relented, just as he had done with respect to the earlier demonstration, and said that he would find a substitute, stating "we'll work it out." Populo testified that despite McCarthy's initial assurance, he received a call at home from McCarthy later that evening saying that Cullop was ordering Populo to appear. Populo testified that he then called Cullop. At his deposition, Populo described the conversation as follows:
 ... I was transferred by the secretary. Dale knew who it was on the line, and picked up the phone and flat out said, without any introduction or anything, said, "Listen, this business does not recognize religious days of worship. You cannot--we cannot conduct this business by your dictates or whatever. And you will be there tonight."
 In response to a question from counsel as to whether Populo's response to Cullop was the same as it had been to Justin McCarthy, Populo continued:
 It was the same. I explained to him about my religious beliefs. I explained to him that this [demonstration] wasn't that important, that I was going in and basically just doing physical labor.
 He said, "That's not the issue." He said, "The issue is that I'm telling you to be there, you will be there."
 I told him again about the religious beliefs and that I wasn't going to work.
 And he went on stating several times that religion is all in the head, it's not important, that you can worship chicken heads if you want to, go around cutting off chicken heads and worship them if you want to. He said religion is not a valid reason to release me from my duties.
 And so I basically told him, "Dale," I said, "there's no valid reason for me to be there. It's already prearranged, I won't be there."
 ............................................................
 ....................
 * * *
 And he says, "Well, then, I'll have Justin write up a letter of termination for you."
 We believe that the testimony of Populo is sufficient to create a genuine issue of material fact concerning whether Hanson-Loran could have accommodated Populo without undue hardship. We are aware of the difficulties and need for employee flexibility in small sales offices, but these considerations, in themselves, do not warrant an award of summary judgment in a case such as this where there is a factual dispute as to whether the failure to accommodate was the result of business exigency or discriminatory animus.
 Accordingly, we reverse the grant of summary judgment, and remand the case to the district court for further proceedings consistent with this disposition.
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 To establish his prima facie case, the employee must show: "(1) he had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer threatened or subjected him to discriminatory treatment, including discharge because of his inability to fulfill the job requirements." Heller v. EBB Auto Co., 8 F.3d 1433, 1438 (9th Cir.1993)
 
 
 [2]
 Because we hold that the record contains an unresolved issue of material fact, we need not resolve the question of whether the district court implicitly made a finding of undue hardship. We note, however, that the district court concluded its analysis by contrasting Hanson-Loran's "reasonable efforts" with Populo's "absolutist position" against work on his Sabbath, citing with approval EEOC v. Ithaca Indus., Inc., 829 F.2d 519, overruled, 849 F.2d 116 (4th Cir.) (en banc), cert. denied, 488 U.S. 924 (1988). As the EEOC points out, the district court appears to cite the panel decision in Ithaca Industries for the proposition that an employee must be prepared to compromise his religious beliefs in order to invoke the protections of Title VII. It was precisely this holding, however, that the Fourth Circuit expressly overruled when it reheard the case en banc. See Ithaca Industries, 849 F.2d at 118-19 & n. 3 (overruling Jordan v. North Carolina Nat't Bank, 565 F.2d 72 (4th Cir.1977) and indicating that while an employee's absolute refusal to compromise his religious beliefs may make it less likely that an employer will be able to accommodate the employee without undue hardship, even an employee's absolute refusal to work on a holy day does not necessarily mean that reasonable accommodation is not possible). The court's approving reference to the analysis in the overruled panel decision in Ithaca Industries suggests that the court did not believe it had to conduct the "undue hardship" inquiry