28 F.3d 1208
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Rose M. BENTON, Plaintiff-Appellee,
v.
CARDED GRAPHICS, INCORPORATED, Defendant-Appellant.
 No. 93-1675.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1994.
Decided June 9, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. B. Waugh Crigler, Magistrate Judge. (CA-92-28-H)
 Argued: Glen M. Hodge, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for appellant.
 Terry Lane Armentrout, Roger A. Ritchie & Partners, P.L.C., Harrisonburg, Va., for appellee.
 On Brief: G. Chris Brown, Jennifer Ellen Kirkland, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for appellant.
 W.D.Va.
 AFFIRMED.
 Before HALL and MURNAGHAN, Circuit Judges, and RONEY, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this suit alleging that plaintiff was terminated from employment because of her religious practices in violation of federal law, the defendant employer appeals an award of $52,812.27.[1] The finding of the magistrate judge, who tried the case on consent of the parties, that defendant refused to accommodate plaintiff's religious practices, namely, her refusal to work on her Sabbath day, was not clearly erroneous and was based on a proper interpretation of the accommodation requirement of the federal statute. We therefore affirm.
 
 
 2
 Because of the detailed findings of the magistrate judge, both in its decision from the bench and on a motion to reconsider, we need not discuss many details of the case. The crux of the case is whether the employer attempted to make a reasonable accommodation for a new religion embraced by plaintiff before discharging her.
 
 
 3
 Plaintiff Rose M. Benton was hired by defendant Carded Graphics, Inc. ("CGI") in 1980. CGI is engaged in the manufacture and sale of packaging material such as folding cartons and corrugated boxes, with 22 employees at the plant where plaintiff worked. At the time of her discharge, she was supervisor of the finishing department.
 
 
 4
 In the fall of 1990, after ten years of employment, Benton embraced a new religion, Worldwide Church of God. Its adherents are prohibited from working on Saturday, its Sabbath. Plaintiff's refusal to work on Saturday led to her discharge. The critical question at trial was whether the employer made a proper effort to accommodate that refusal.
 
 
 5
 The applicable portion of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a), makes it unlawful for an employer to discriminate against an employee on the basis of her religion. Under 42 U.S.C. Sec. 2000e(j), an employer must accommodate religious practices of its employees unless:
 
 
 6
 ... an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.
 
 
 7
 "Once the employee has established a prima facie case, the burden shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship." Smith v. Pyro Mining Co., 827 F.2d 1081, 1085 (6th Cir.1987), cert. denied, 485 U.S. 989 (1988). CGI concedes that Benton made out a prima facie case and that it had the burden to prove that an accommodation could not be made without undue hardship. The outcome of cases of this kind generally turns on a perception of what hardship is undue. Anderson v. General Dynamics Convair Aerospace Div., 589 F.2d 397, 402 (9th Cir.1978), cert. denied, 442 U.S. 921 (1979), discusses the point that undue hardship is something more than just hardship.
 
 
 8
 Undue hardship means something greater than hardship. Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts. Even proof that employees would grumble about a particular accommodation is not enough to establish undue hardship. As the Supreme Court pointed out in Franks v. Bowman [Transportation Co., 424 U.S. 774, 775 (1976) ], quoting United States v. Bethlehem Steel Corp., (2d Cir.1971) 446 F.2d 652, 663: "If relief under Title VII can be denied merely because the majority group of employees, who have not suffered discrimination, will be unhappy about it, there will be little hope of correcting the wrongs to which the Act is directed."
 
 
 9
 The magistrate judge found that CGI terminated Benton without attempting to determine whether it could accommodate her religious practices without undue hardship. While not disbelieving CGI's claim that it gave some thought to means of relieving Benton from working the few Saturdays at issue, the magistrate judge simply concluded that, under the circumstances of this case, CGI's efforts were insubstantial. It should be noted that offers to reduce the number of working Saturdays to as few as possible would not accommodate an employee whose religion prohibits working on any Saturday. EEOC v. Ithaca Industries, Inc., 849 F.2d 116 (4th Cir.), cert. denied, 488 U.S. 924 (1988).
 
 
 10
 We do not read the magistrate judge's decision as absolutely requiring an employer to actually implement an accommodating program, as CGI argues. We doubt that EEOC v. Ithaca Industries, Inc., supra, requires the implementation of an accommodating program that would obviously be an undue hardship. See Ansonia Board of Education v. Philbrook, 479 U.S. 60, 67 (1986) ("The employer in [Trans World Airlines, Inc. v.] Hardison [, 432 U.S. 63 (1977),] simply argued that all conceivable accommodations would result in undue hardship, and we agreed."). The magistrate judge seems to have fully understood this principle and that undue hardship was not shown here when he stated that "[i]f this was a case where they were working 25 out of 52 Saturdays out of the year, we may have a different story."
 
 
 11
 What the law does require is a thorough exploration of all the alternatives that would meet the employee's religious needs, and the fact-based determination of whether any of those programs could be implemented without a predictably certain undue hardship. In this case, the court found that there was insufficient exploration of alternatives that would permit Benton to observe every Saturday as her Sabbath. The facts show there were few Saturdays involved.[2] It is clear that by use of her vacation time and the granting of Saturdays off for other personal reasons, which historically were a part of her employment arrangements before the religious issue arose, Benton could have been given every Saturday off without a substantial change in her own employment conditions. The effect of such an accommodation on the working conditions of other employees was not factually analyzed for undue hardship. Contrary to CGI's suggestion, this case is not like Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), where the proposed accommodation would have violated union seniority contracts.
 
 
 12
 CGI took the position that there was only one other employee who could handle Benton's work on Saturday. But the magistrate judge found that, although that employee was unquestionably the best person to fill the spot, "I think the line people knew that other people could do the job just as well. Even though they didn't want to take that responsibility, they could take it in a pinch, pitch-in, help-out, irregular, average, four times a year situation." This finding is not clearly erroneous.
 
 
 13
 Even accepting CGI's argument to this court that only the plant manager was qualified to do Benton's job, there is scant evidence that it considered what hardship, if any, would be involved in training some other employees to do the required work on Saturdays. When Benton was discharged, someone had to be trained to do her job. There is no evidence as to why it would have been ang "undue" hardship for that to have taken place while she was still employed.
 
 
 14
 With the record before the magistrate judge, it is clear that CGI failed to carry its burden of persuasion that it made the statutorily required effort to accommodate Benton's religion.
 
 
 15
 The only other issue warranting discussion is the trial court's refusal to deduct unemployment benefits from Benton's back pay award. CGI fails to note in its argument that this circuit has previously decided that unemployment compensation may not be deducted from a back pay award. EEOC v. Ford Motor Co., 645 F.2d 183, 195 (4th Cir.1981), rev'd on other grounds, 458 U.S. 219 (1982). We have reasoned that the amounts paid as state employment compensation are made to carry out an independent social policy and should not affect a back pay award under Title VII:
 
 
 16
 ... To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent.
 
 
 17
 ... Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation.... [T]he payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state.... It is thus apparent from what we have already said that failure to take them into account in ordering back pay does not make the employees more than "whole" as that phrase has been understood and applied.
 
 
 18
 Id. at 195, quoting NLRB v. Gullett Gin Co., 340 U.S. 361, 364 (1951).
 
 
 19
 Although the issue could arguably go either way, the trial court correctly followed the law of this circuit.
 
 AFFIRMED
 
 
 [1]
 $41,100.86 back pay, $3,100 prejudgment interest, and $8,611.41 attorney's fees and costs. Reinstatement and front pay were denied and are not an issue on this appeal
 
 
 [2]
 In 1983, Benton worked 12 Saturdays; in 1984, 4 Saturdays; in 1985, 3 Saturdays; in 1986, 3 Saturdays; in 1987, 2 Saturdays; in 1988, 4 Saturdays; in 1989, 6 Saturdays; and in 1990, 2 Saturdays