58 F.3d 1337
 68 Fair Empl.Prac.Cas. (BNA) 341,
66 Empl. Prac. Dec. P 43,611, 64 USLW 2054
 Christine L. WILSON, Appellant,
v.
U.S. WEST COMMUNICATIONS, doing business as Northwestern
Bell Telephone Company; Mary Joe Jensen, in her
official capacity; Gail Klein, in his
official capacity, Appellees.
 No. 94-2752.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1995.
Decided July 10, 1995.
 
 Scott S. Phillips, argued, Omaha, NE (Thomas W. Ulrich and Tricia A. Freeman, on the brief), for appellant.
 Robert Rossiter, Jr., argued, Omaha, NE (Jerry R. Atencio, Englewood, CO, on the brief), for appellee.
 Before HANSEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and BOGUE,* District Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Christine L. Wilson appeals from judgment entered in favor of U.S. West Communications on her religious discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a)(1)(1988). Wilson's wearing of a graphic anti-abortion button caused immediate and emotional reactions from co-workers, and U.S. West asked Wilson to cover the button during work. She refused, and U.S. West ultimately fired her. On appeal, Wilson argues that the district court[1] clearly erred in finding that her religious vow did not include being a "living witness." She also argues that the district court erred as a matter of law by concluding that U.S. West offered her a reasonable accommodation of her religious beliefs, and in holding that Wilson's proposals of reasonable accommodation constituted an undue hardship to U.S. West. We affirm the district court's judgment.
 
 
 2
 Wilson tried her Title VII claim to the court, and we recite the facts essentially as found in the district court's detailed memorandum opinion and order.
 
 
 3
 Wilson worked for U.S. West for nearly 20 years before U.S. West transferred her to another location as an information specialist, assisting U.S. West engineers in making and keeping records of the location of telephone cables. This facility had no dress code.
 
 
 4
 In late July 1990, Wilson, a Roman Catholic, made a religious vow that she would wear an anti-abortion button "until there was an end to abortion or until [she] could no longer fight the fight." The button was two inches in diameter and showed a color photograph of an eighteen to twenty-week old fetus. The button also contained the phrases "Stop Abortion," and "They're Forgetting Someone." Wilson chose this particular button because she wanted to be an instrument of God like the Virgin Mary. She believed that the Virgin Mary would have chosen this particular button. She wore the button at all times, unless she was sleeping or bathing. She believed that if she took off the button she would compromise her vow and lose her soul.
 
 
 5
 Wilson began wearing the button to work in August 1990. Another information specialist asked Wilson not to wear the button to a class she was teaching. Wilson explained her religious vow and refused to stop wearing the button.
 
 
 6
 The button caused disruptions at work. Employees gathered to talk about the button. U.S. West identified Wilson's wearing of the button as a "time robbing" problem. Wilson acknowledged that the button caused a great deal of disruption. A union representative told Wilson's supervisor, Mary Jo Jensen, that some employees threatened to walk off their jobs because of the button. Wilson's co-workers testified that they found the button offensive and disturbing for "very personal reasons," such as infertility problems, miscarriage, and death of a premature infant, unrelated to any stance on abortion or religion.
 
 
 7
 In early August 1990, Wilson met with her supervisors, Jensen and Gail Klein, five times. Jensen and Klein are also Roman Catholics against abortion. Jensen and Klein told Wilson of co-workers' complaints about the button and an anti-abortion T-shirt Wilson wore which also depicted a fetus. Jensen and Klein told Wilson that her co-workers were uncomfortable and upset and that some were refusing to do their work. Klein noted a 40 percent decline in the productivity of the information specialists since Wilson began wearing the button.
 
 
 8
 Wilson told her supervisors that she should not be singled out for wearing the button because the company had no dress code. She explained that she "just wanted to do [her] job," and suggested that co-workers offended by the button should be asked not to look at it. Klein and Jensen offered Wilson three options: (1) wear the button only in her work cubicle, leaving the button in the cubicle when she moved around the office; (2) cover the button while at work; or (3) wear a different button with the same message but without the photograph. Wilson responded that she could neither cover nor remove the button because it would break her promise to God to wear the button and be a "living witness." She suggested that management tell the other information specialists to "sit at their desk[s] and do the job U.S. West was paying them to do."
 
 
 9
 On August 22, 1990, Wilson met with Klein, Jensen, and the union's chief steward. During the meeting, Klein again told Wilson that she could either wear the button only in her cubicle or cover the button. Klein explained that, if Wilson continued to wear the button to work, she would be sent home until she could come to work wearing proper attire.
 
 
 10
 In an August 27, 1990 letter, Klein reiterated Wilson's three options. He added that Wilson could use accrued personal and vacation time instead of reporting to work. Wilson filed suit but later dismissed the action when U.S. West agreed to allow her to return to work and wear the button pending an investigation by the Nebraska Equal Opportunity Commission.
 
 
 11
 Wilson returned to work on September 18, 1990, and disruptions resumed. Information specialists refused to go to group meetings with Wilson present. The employees complained that the button made them uneasy. Two employees filed grievances based on Wilson's button. Employees accused Jensen of harassment for not resolving the button issue to their satisfaction. Eventually, U.S. West told Wilson not to report to work wearing anything depicting a fetus, including the button or the T-shirt. U.S. West told Wilson again that she could cover or replace the button or wear it only in her cubicle. U.S. West sent Wilson home when she returned to work wearing the button and fired her for missing work unexcused for three consecutive days. Wilson sued U.S. West, claiming that her firing constituted religious discrimination.
 
 
 12
 An employee establishes a prima facie case of religious discrimination by showing that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this belief; (3) the employee was disciplined for failing to comply with the conflicting employment requirement. Bhatia v. Chevron U.S.A., Inc., 734 F.2d 1382, 1383 (9th Cir.1984). The parties stipulated that Wilson's "religious beliefs were sincerely held," and the district court ruled that Wilson made a prima facie case of religious discrimination. The court then considered whether U.S. West could defeat Wilson's claim by demonstrating that it offered Wilson a reasonable accommodation. An employer is required to "reasonably accommodate" the religious beliefs or practices of their employees unless doing so would cause the employer undue hardship. 42 U.S.C. Sec. 2000e(j); Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 69, 107 S.Ct. 367, 372, 93 L.Ed.2d 305 (1986); Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 74-75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977).
 
 
 13
 The court considered the three offered accommodations and concluded that requiring Wilson to leave the button in her cubicle or to replace the button were not accommodations of Wilson's sincerely held religious beliefs because: (1) removing the button at work violated Wilson's vow to wear the button at all times; and (2) replacing the button prohibited Wilson from wearing the particular button encompassed by her vow. However, the court concluded that requiring Wilson to cover the button while at work was a reasonable accommodation. The court based this determination on its factual finding that Wilson's vow did not require her to be a living witness. The court reasoned that covering the button while at work complied with Wilson's vow but also reduced office turmoil. The court also concluded that, even if Wilson's vow required her to be a living witness, U.S. West could not reasonably accommodate Wilson's religious beliefs without undue hardship. The court entered judgment for U.S. West, and Wilson appeals.
 
 
 14
 Wilson argues that the district court erred as a matter of law in its determination that U.S. West offered her a reasonable accommodation of her religious beliefs. Wilson first argues that U.S. West did not need to reasonably accommodate her religious beliefs, but should simply allow her to do her job and instruct her co-workers that the company's pluralism policy and EEOC guidelines were paramount to their alleged frustrations with the button. Wilson then argues that the district court based its conclusion of reasonable accommodation on an incorrect factual predicate: that her vow did not require her to be a living witness. She also argues that the district court erred in determining that the accommodations she suggested would create an undue hardship.
 
 I.
 
 15
 We first consider whether the district court clearly erred in finding that Wilson's vow did not require her to be a living witness.[2] Wilson argues that the parties' stipulation that she sincerely held her religious beliefs necessarily includes her being a living witness. She insists that she never waivered in her position that the vow required her to be a living witness, and that the district court erred in relying on a newspaper article to reject the living witness component of her vow.
 
 
 16
 We review a finding of fact for clear error. Fed.R.Civ.P. 52(a). A finding of fact is clearly erroneous when, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). When findings are based on credibility determinations, we accord them great deference. Id. at 575, 105 S.Ct. at 1512.
 
 
 17
 The district court's finding that Wilson's vow did not require her to be a living witness is supported by the record. First, the stipulation that Wilson's religious beliefs were sincerely held does not cover the details of her religious vow. Second, there is evidence that Wilson's vow did not always include the requirement that she be a living witness. Indeed, the evidence suggests that Wilson first mentioned the living witness requirement only after her supervisor suggested that she cover the button. Wilson's answer to an interrogatory asking her to explain her vow did not mention any living witness requirement, but explained that her vow was "to acknowledge the sanctity of the unborn by wearing the pro-life button until the days (sic) that abortions were no longer performed." Although Wilson testified at trial that wearing the button would allow her to be a "living witness to the truth," on cross-examination, she admitted that, in an interview given in August 1990 to a reporter for The Catholic Voice, she said nothing about being a living witness. Klein testified that he never heard Wilson use the word witness in explaining her vow, but rather, that he understood Wilson's vow was to "wear the button until abortions were ended." Accordingly, the district court's finding is supported by the evidence and is not clearly erroneous. See Anderson, 470 U.S. at 574, 105 S.Ct. at 1511-12 (when "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous").
 
 II.
 
 18
 We next consider Wilson's argument that the district court erred as a matter of law in concluding that U.S. West offered to reasonably accommodate Wilson's religious views. Wilson argues that her religious beliefs did not require her or any other employee to miss or rearrange work schedules, as typically causes a reasonable accommodation dispute. She argues that it was her co-workers' response to her beliefs that caused the workplace disruption, not her wearing the button. Wilson contends that U.S. West should have focused its attention on her co-workers, not her. Wilson's brief states: "Quite frankly, ... Klein and Jensen should have simply instructed the troublesome co-workers to ignore the button and get back to work."
 
 
 19
 The district court, however, succinctly answered Wilson's argument: Klein was unable to persuade the co-workers to ignore the button. Although Wilson's religious beliefs did not create scheduling conflicts or violate dress code or safety rules, Wilson's position would require U.S. West to allow Wilson to impose her beliefs as she chooses. Wilson concedes the button caused substantial disruption at work. To simply instruct Wilson's co-workers that they must accept Wilson's insistence on wearing a particular depiction of a fetus as part of her religious beliefs is antithetical to the concept of reasonable accommodation. See Hardison, 432 U.S. at 81, 97 S.Ct. at 2275; Mann v. Frank, 7 F.3d 1365, 1369 (8th Cir.1993).
 
 
 20
 Moreover, U.S. West did not oppose Wilson's religious beliefs, but rather, was concerned with the photograph. The record demonstrates that U.S. West did not object to various other religious articles that Wilson had in her work cubicle or to another employee's anti-abortion button. It was the color photograph of the fetus that offended Wilson's co-workers, many of whom were reminded of circumstances unrelated to abortion. Indeed, many employees who opposed Wilson's button shared Wilson's religion and view on abortion.
 
 
 21
 Wilson also argues that requiring her to cover the button is not a reasonable accommodation. Citing Smith v. Pyro Mining Co., 827 F.2d 1081 (6th Cir.1987), cert. denied, 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988), and EEOC v. Ithaca Industries, Inc., 849 F.2d 116 (4th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988), she argues that the accommodation offered required her to abandon her religious beliefs, and therefore, that the accommodation was no accommodation at all. Having affirmed the finding that Wilson's religious vow did not require her to be a living witness, we summarily reject this argument. U.S. West's proposal allowed Wilson to comply with her vow to wear the button and respected the desire of co-workers not to look at the button. Hence, the district court did not err in holding that U.S. West reasonably accommodated Wilson's religious beliefs.
 
 III.
 
 22
 Finally, Wilson argues that the district court erred in concluding that her suggested proposals would be an undue hardship for U.S. West.
 
 
 23
 In Ansonia Board of Education, the Supreme Court held that an employer is not required to select the employee's proposal of reasonable accommodation and that any reasonable accommodation by the employer is sufficient to comply with the statute. 479 U.S. at 68-69, 107 S.Ct. at 372. "The employer violates the statute unless it 'demonstrates that [it] is unable to reasonably accommodate ... an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business.' " Id. at 68, 107 S.Ct. at 371 (quoting 42 U.S.C. Sec. 2000e(j)). When the employer reasonably accommodates the employee's religious beliefs, the statutory inquiry ends. Id. The employer need not show that the employee's proposed accommodations would cause an undue hardship. Id. Undue hardship is at issue "only where the employer claims that it is unable to offer any reasonable accommodation without such hardship." Id. at 68-69, 107 S.Ct. at 372 (citing Hardison, 432 U.S. at 63, 97 S.Ct. at 2266).
 
 
 24
 Because we hold that U.S. West offered Wilson a reasonable accommodation, our inquiry ends, and we need not consider Wilson's argument that her suggested accommodations would not cause undue hardship.[3] Id.
 
 
 25
 We recognize that this case typifies workplace conflicts which result when employees hold strong views about emotionally charged issues. We reiterate that Title VII does not require an employer to allow an employee to impose his religious views on others. The employer is only required to reasonably accommodate an employee's religious views.
 
 
 26
 We affirm the district court's judgment.
 
 
 
 *
 The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska
 
 
 [2]
 Wilson testified that a living witness is someone who, by their actions, more than their words, is a "witness to the truth." Wilson explained that by wearing the button she could simply remind people about abortion instead of preaching about it
 
 
 [3]
 The district court went on to conclude that if Wilson's vow included her being a living witness, U.S. West could not implement any of her suggested accommodations without imposing more than a de minimis cost to U.S. West, and thus, that her alternatives constituted an undue hardship. Wilson suggested that U.S. West: (1) instruct Wilson's co-workers to ignore the button; (2) separate Wilson's work station from other workers; or (3) transfer Wilson to another division. Even though it is unnecessary that we reach this issue, we have no doubt that the district court did not err in concluding that these options would result in an undue hardship to U.S. West