In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1486

Elizabeth Anderson,

Plaintiff-Appellant,

v.

U.S.F. Logistics (IMC), Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana,
Indianapolis Division.
No. IP 00-1364 C T/G--John D. Tinder, Judge.

Argued September 11, 2001--Decided December 14, 2001

Before Cudahy, Easterbrook and Williams,
Circuit Judges.

Cudahy, Circuit Judge.   In this appeal
from a denial of a preliminary
injunction, Elizabeth Anderson argues
that the district court erred in
concluding that she was not likely to
succeed on her claim that her employer,
U.S.F. Logistics ("U.S.F."), engaged in
religious discrimination. We affirm.

I.

   Elizabeth Anderson is a believer in and
follower of the Christian Methodist
Episcopal faith. As an expression of her
faith, Anderson tells people to "Have a
Blessed Day," especially in signing off
on written correspondence or as a way to
end telephone conversations. However, she
does not use the "Blessed Day" phrase all
of the time. For example, sometimes she
does not use the phrase when she is busy.

   U.S.F. is a company that does shipping
for other companies. Anderson has worked
for U.S.F. since December 1995. In March
1999, Anderson was promoted to office
coordinator. As an office coordinator,
Anderson was responsible for being the
liaison between U.S.F. and its customers
and vendors. Microsoft is U.S.F.'s
largest customer. After becoming an

office coordinator, Anderson had regular contact with Microsoft employees.

Throughout her tenure with U.S.F., Anderson often used the phrase, "Have a Blessed Day," with her co-employees and with U.S.F.'s customers. Anderson continued to use the "Blessed Day" phrase after she became an office coordinator. Neither Anderson nor U.S.F. received any complaints about her use of "Blessed Day" until June 9, 1999. On that date, Mark LaRussa, a Microsoft liaison with U.S.F., complained to Anderson that her use of the phrase was "unacceptable" and must stop. In response to LaRussa's complaint, U.S.F. instructed Anderson to remove the closing "Have a Blessed Day" from documents sent to Microsoft. The following Monday, however, Anderson sent an e-mail to Microsoft containing the "Blessed Day" phrase.

After receiving the e-mail, LaRussa called Jeffery Starnes, Anderson's immediate supervisor to complain. Thereafter, Starnes instructed Anderson to refrain from using the "Blessed Day" phrase in her daily business interactions with Microsoft. In response, Anderson notified Starnes that the "Blessed Day" phrase was part of her religious practice. She told him that if he would identify the person or persons that the phrase offended, she would not use the phrase with them. Starnes did not respond to Anderson's proposed accommodation.

On June 21, 1999, the Monday after her discussion with Starnes, Anderson again sent an e-mail to Microsoft containing the "Blessed Day" phrase. Shortly thereafter, Chuck Tolley, another of Anderson's supervisor, asked her why she continued to use the phrase in communications with Microsoft. In response, Anderson scheduled a meeting with Tolley and Starnes.
At the meeting, Anderson notified Tolley that she had personally contacted several people at Microsoft who did not object to her use of the phrase. She reiterated that it was her religious expression, and once again stated that, if U.S.F. would identify those who were offended, she would not use the phrase with them. Tolley did not identify any particular person or persons.

The following day, Tolley gave Anderson

a written reprimand for her use of the "Blessed Day" phrase with Microsoft. The reprimand also notified Anderson that continued use of the phrase could result in termination. U.S.F. also issued a company policy statement to all of its Indianapolis employees that they should refrain from using "additional religious, personal or political statements" in their closing remarks in verbal or written communications with any customer or with fellow employees. Despite the language in the policy statement, U.S.F. permitted Anderson to continue to use the "Blessed Day" phrase with her co-workers.

Next, Anderson went public with the dispute. On October 10, 1999, a local Indianapolis newspaper published an article about the controversy. In the article, a spokesperson from Microsoft was quoted as saying that Microsoft did not have a problem with Anderson's use of the "Blessed Day" phrase. Based on her reading of the article, Anderson decided that she could resume using the "Blessed Day" phrase. The next day, Anderson sent a new piece of business correspondence to Microsoft containing the "Blessed Day" phrase. She was not disciplined then in any way for her use of the phrase. However, Tolley refused to withdraw the earlier reprimand.

Anderson refrained from using the "Blessed Day" phrase again until February 15, 2000. On that date, she sent an e-mail to Microsoft with the phrase "HAVE A BLESSED DAY" in all capitals, surrounded by quotation marks. She received another reprimand. Subsequently, on August 30, 2000, Anderson filed a five-count Complaint and a Verified Motion for a Preliminary and Permanent Injunction in federal district court. The Complaint alleged that U.S.F. violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq., by failing to reasonably accommodate her religious practice. The Motion for Preliminary and Permanent Injunction sought an injunction to permit Anderson to use the "Have a Blessed Day" phrase in written communications with U.S.F.'s customers.

The district court denied Anderson's motion for a preliminary injunction. The court found that Anderson did not have a likely chance of success on the merits

because U.S.F. reasonably accommodated her religious practice. Anderson then filed an interlocutory appeal here.

II.

This court has jurisdiction to hear an appeal of a denial of a preliminary injunction under 28 U.S.C. sec. 1292(a)(1)./1 In examining a denial of a preliminary injunction, we review the district court's findings of fact for clear error, its balancing of the factors for a preliminary injunction under an abuse of discretion standard and its legal conclusions de novo. Kiel v. City of Kenosha, 236 F.3d 814, 815 (7th Cir. 2000). The purpose of a preliminary injunction is to minimize the hardship to the parties pending resolution of their lawsuit. Id. at 816 n.4. In assessing whether a preliminary injunction is warranted, the party seeking the injunction must demonstrate that: 1) it has a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law exists; and 3) it will suffer irreparable harm if the preliminary injunction is denied. See Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001). If the court is satisfied that these three conditions have been met, it then must consider whether the irreparable harm the applicant will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted. Id. In addition, the court must determine whether the preliminary injunction will harm the public interest. Id. Further, preliminary injunctions are disfavored in the employment context. See, e.g., Hetreed v. Allstate Ins. Co., 135 F.3d 1155, 1158 (7th Cir. 1998) (noting that interlocutory relief should be rare in employment-discrimination cases).

A.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail to or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion[.]" 42 U.S.C. sec. 2000e-2(a)(1). Religion includes "all aspects

of religious observance and practice, as well as belief." 42 U.S.C. sec. 2000e(j). A plaintiff alleging religious discrimination under Title VII must first establish a prima facie case, after which the burden is on the employer to show that a reasonable accommodation of the religious practice was made or that any accommodation would result in undue hardship. Baz v. Walters, 782 F.2d 701, 706 (7th Cir. 1986).

The district court assumed that Anderson had established her prima facie case. Anderson v. U.S.F. Logistics, 2001 WL 114270, *9 (S.D. Ind. Jan. 30, 2001). The court then denied injunctive relief because it concluded that U.S.F. reasonably accommodated Anderson's religious practice and therefore Anderson had a less than promising prospect of success on the merits. Anderson challenges the district court's conclusion about reasonable accommodation.

"A reasonable accommodation of an employee's religion is one that 'eliminates the conflict between employment requirements and religious practices.'" Wright v. Runyon, 2 F.3d 214, 217 (7th Cir. 1993) (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 70 (1986)). However, it is well settled that "Title VII . . . requires only reasonable accommodation, not satisfaction of an employee's every desire." Rodriguez v. City of Chicago, 156 F.3d 771, 776 (7th Cir. 1998) (internal citations omitted). Further, a finding of reasonable accommodation is a finding of fact entitled to deference. See Redmond v. GAF Corp., 574 F.2d 897, 903 (7th Cir. 1978) (holding that a finding of accommodation is reviewed under the "clearly erroneous" standard of review instead of under a de novo standard).

Anderson first argues that the district court erred in concluding that because Anderson's sincere religious practice was not a requirement of her religion, she was entitled to a lesser "reasonable accommodation" of this religious practice than if the practice were required by her religion. See Appellant's Br. at p. 22 ("In other words, the District Court determined as a matter of law that because Ms. Anderson's religious practice is unique to her, U.S.F. satisfied its

reasonable accommodation obligation when it unilaterally restricted her religious practice."). If the district court in fact reached that conclusion, it probably would have erred. However, the district court did not entertain that conclusion. Rather, the district court found that her religious practice was accommodated by U.S.F., as required under Title VII. In making this determination, the district court first defined Anderson's religious practice as the sporadic use of the "Blessed Day" phrase. This definition involves a finding of fact and is not clearly erroneous. See Kiel, 236 F.3d at 815. On the record, there is sufficient evidence to support such a finding. Anderson concedes that she does not use the phrase all the time. Neither has she made a religious commitment to use the phrase on every occasion. Nor is she required by her religion to use the phrase all of the time. Thus, an accommodation that allows her to use the phrase with some people but not with everyone could be a reasonable accommodation. The district court so found, and on these facts, it did not clearly err in reaching that conclusion.

In many ways, this case is similar to Wilson v. U.S. W. Communications, 58 F.3d 1337 (8th Cir. 1995). In Wilson, the plaintiff was terminated by her employer for refusing to cover an anti-abortion button displaying a graphic picture of a fetus. See 58 F.3d at 1341. Co-workers found the photograph disturbing and it disrupted the work environment. See id. at 1338. To address the co-workers' concerns, U.S. West proposed alternatives to Wilson. She could: (1) wear the button only in her work cubicle, leaving the button in her cubicle when she moved around the office; (2) cover the button while at work; or (3) wear a different button with the same message but without the picture. See id. at 1341. However, Wilson refused the proposed accommodation and she was terminated. The Wilson court held that U.S. West reasonably accommodated Wilson's religious practice of wearing the button. See id. at 1341–42. The Eighth Circuit reasoned that forcing U.S. West to allow Wilson to wear the uncovered button throughout the office would require U.S. West to allow Wilson to impose her beliefs as she chose. Id. at 1341. The court found that "U.S. West did not oppose her religious

beliefs but rather was concerned with the photograph." Id. U.S. West's proposal would allow Wilson to comply with her commitment to wear the button but respected the desire of co-workers not to look at the button. Id.

Here, Anderson's religious practice did not require her to use the "Blessed Day" phrase with everyone. Further, U.S.F. did not seek to denigrate Anderson's religious beliefs. In fact, U.S.F. has on at least one occasion encouraged Anderson's religious practice by requesting Anderson to say a prayer, which was broadcast over company loudspeakers, prior to a company-sponsored event. Rather, U.S.F. was concerned about its relationship with its customers, one of whose representatives had objected to the use of the "Blessed Day" phrase. U.S.F.'s accommodation allowed Anderson to comply with her practice of using the "Blessed Day" phrase while respecting the wishes of at least one customer who objected to the use of the phrase. Thus, U.S.F. reasonably accommodated Anderson.

Second, Anderson argues that the district court erred in concluding that her use of the "Blessed Day" phrase imposed her religious beliefs on U.S.F.'s customers or vendors. Anderson argues that, to the contrary, the "Blessed Day" phrase does not in any way impose her religious beliefs on her co-employees or U.S.F.'s customers. Further, Anderson argues that U.S.F. failed to present any evidence that Anderson's use of the phrase would substantially disrupt the workplace environment or damage U.S.F.'s relationships with its customers or vendors. Because hearings on preliminary injunctions occur at an early stage of a case, the district court itself noted that its findings and conclusions on Anderson's motion were preliminary and tentative. See Anderson, 2001 WL 114270, *9. Thus, it is unsurprising that the district court did not go into great detail about how Anderson's use of the "Blessed Day" phrase imposed her religious views upon customers or vendors. However, a Microsoft liaison had complained that the use of the phrase was "inappropriate." Permitting Anderson to direct the "Blessed Day" phrase towards LaRussa could surely be an imposition of Anderson's religious beliefs upon him.

Further, Anderson has presented no evidence that Microsoft had officially informed U.S.F. that it was content with the use of the "Blessed Day" phrase. Thus, the evidence suggests that Anderson's religious practice could damage U.S.F.'s relationship with Microsoft.

Even if the district court erred in finding that Anderson's religious practice imposed her beliefs upon others, such a determination does not mean that Anderson was not reasonably accommodated by U.S.F. A religious practice that does not actually impose religious beliefs upon others can still be restricted if it impairs an employer's legitimate interests, as long as it is reasonably accommodated. See, e.g., Rodriguez, 156 F.3d at 776 (finding that police officer's religious practice of not guarding abortion clinics was reasonably accommodated by his ability to get a transfer to another district that did not assign officers to that duty).

Finally, Anderson argues that the district court erred in holding that her religious practice was reasonably accommodated when U.S.F.'s company policy, as formally announced, does not provide that accommodation. U.S.F.'s cur rent company policy has language that forbids the use of any religious, personal or political expression, even among co-workers. Anderson, however, concedes that the company policy was never implemented as it is written. She admits that she has been reprimanded only after using the "Blessed Day" phrase in written communications with Microsoft. Further, she does not dispute that she has been permitted to use the "Blessed Day" phrase with co-workers, to hang objects containing various religious phrases in her work area, to read the Bible on her work break and to listen to a religiously oriented radio station at her work station. Thus, despite the language of the company policy, the district court held that Anderson was reasonably accommodated in practice. This accommodation was sufficient to satisfy the company's obligations under Title VII. We agree. The fact that the company policy, as stated, would not reasonably accommodate her religious practice is not controlling. In many cases, a company must modify its stated policies in

practice to reasonably accommodate a religious practice. Cf. Minkus v. Metro. Sanitary Dist. of Greater Chicago, 600 F.2d 80 (7th Cir. 1979) (holding that the municipal employer failed to accommodate a Jewish applicant when it followed its stated policy and scheduled civil service examinations only on Saturdays). In this case, U.S.F. disregarded its stated policy to accommodate Anderson's use of the "Blessed Day" phrase. It permitted her to use the phrase with everyone except customers and vendors. Thus, we hold that the district court did not err in finding that U.S.F.'s selective enforcement of its company policy was a reasonable accommodation of Anderson's religious practice.

B.

Further, even if the district court were incorrect in evaluating the reasonable merits of Anderson's claim, we would still sustain the denial of the preliminary injunction on the alternative ground that Anderson can show no irreparable injury. An appellate court may affirm on any ground that has a basis in the record. See Logan v. Caterpillar, Inc., 246 F.3d 912, 924 (7th Cir. 2001). In this case, counsel for both parties concede that the issue of irreparable injury was raised and argued before the district court. The record also supports this conclusion. See Tr. of Hr'g (November 16, 2000), at pp. 182-83, 206-09. Thus, even though the district court, in denying the preliminary injunction, did not address the irreparable injury prong of the preliminary injunction calculus, we may affirm the judgment on the alternative ground that there was no irreparable injury.

To demonstrate irreparable injury, Anderson must show that she will suffer harm that cannot be prevented or fully rectified by the final judgment after trial. See Roland Mach Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). Anderson's inability to use the "Blessed Day" phrase with customers does not constitute irreparable harm. She was not terminated from her position for her earlier use of the phrase. Neither has she been demoted from her current position. The only potential harms that Anderson has suffered are: (1) the inability to use the "Blessed Day" phrase

and (2) her prior reprimands for the use of the phrase. Regarding the former, Anderson has been able to refrain from using the "Blessed Day" phrase with vendors from October 1999 to February 2000, and again from February to August 2000. A few more months of restraint while the trial proceeds does not appear to impose irreparable injury. As to the latter, U.S.F. had alternative valid reasons for issuing the reprimands-- Anderson's failure to follow her supervisors' orders. Thus, Anderson cannot show that she will suffer irreparable harm absent preliminary injunctive relief.

C.

Anderson also argues that the district court erred in determining that she may not have established the first element of her prima facie case--that she had a bona fide religious practice that conflicted with an employment requirement./2 But the district court did not refuse to grant a preliminary injunction based on Anderson's failure to make a prima facie case. That court assumed that she had done so but that U.S.F. reasonably accommodated her religious practice. Since we agree with the accommodation point, we need not reach the issue whether Anderson could or could not prove the first element of her prima facie case.

III.

For the foregoing reasons, we AFFIRM the judgment of the district court denying preliminary injunctive relief.

FOOTNOTES

/1 28 U.S.C. sec. 1292 provides that: "(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have juris- diction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modifying injunctions, except where a direct review may be had in the Supreme Court."

/2 To make out a prima facie case, a plaintiff must show that "(1) a bona fide religious practice conflicts with an employment requirement, (2) he or she brought the practice to the employer's attention, and (3) the religious practice was the

basis for the adverse employment decision." EEOC v. United Parcel Serv., 94 F.3d 314, 317 (7th Cir. 1996).