# United States Court of Appeals
## For the First Circuit

No. 21-1909

TOGETHER EMPLOYEES, by individual representatives; ROBERTA
LANCIONE; JOYCE MILLER; MARIA DIFRONZO; MICHAEL SACCOCCIO;
ELIZABETH BIGGER; NATASHA DICICCO; NICHOLAS ARNO; RUBEN ALMEIDA,

Plaintiffs, Appellants,

v.

MASS GENERAL BRIGHAM INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Ryan McLane, Lauren Bradford, and McLane & McLane, LLC on
brief for appellants.
Katherine E. Perrelli, Lynn A. Kappelman, Kristin McGurn,
Dawn Reddy Solowey, and Seyfarth Shaw LLP on brief for appellee.

November 18, 2021

**LYNCH**, **Circuit Judge**. Our ruling concerns a motion for injunction pending appeal of the denial of a request for preliminary injunctive relief. Appellants, employees of Mass General Brigham, Inc. (MGB), challenge their employer's application of its mandatory vaccination policy to them individually. They do not challenge the policy itself, only MGB's denial of their individual requests for exemptions. They acknowledge that MGB has granted religious or medical exemptions to at least 234 employees. Their complaint is that they are not among that group.

MGB operates fourteen hospitals and many other medical facilities across Massachusetts, including Massachusetts General Hospital and Brigham and Women's Hospital. It employs approximately 6,500 physicians, 9,100 nurses, as well as another 78,000 individuals and treats approximately 1.5 million patients each year. In June 2021, MGB decided to require all of its employees to be vaccinated against COVID-19 unless they qualify for a medical or religious exemption. MGB required employees to receive their first doses or exemptions by October 15, 2021.

The appellants, eight MGB employees, each sought individual religious exemptions, which MGB denied.[1] Some also

---

[1] The appellants also include an unincorporated membership association, Together Employees, made up of other MGB employees. The district court held that Together Employees likely lacked

sought individual medical exemptions, which MGB denied as well. When the employees still refused to get vaccinated, MGB placed them on unpaid leave. The appellants sued MGB under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA), arguing that MGB acted unlawfully when it denied their individual exemption requests. The district court orally denied a motion for a preliminary injunction, which would have required the reinstatement of the appellants from unpaid leave status. After the vaccination deadline MGB imposed had passed, one appellant resigned, another got vaccinated, and the remaining six had their employment terminated. The appellants now seek an injunction pending appeal. Finding that the appellants have not met their burden to show they are entitled to an injunction pending appeal, we deny the motion.

## I. Background

## A. MGB's Vaccination Policy and Exemption Process

MGB required all of its employees to be vaccinated to guard against the "unique threat of severe illness and death associated with COVID-19 especially in hospitalized patients" and the risks of COVID-19's virulent delta variant; to maintain

---

associational standing. Together Emps. v. Mass Gen. Brigham Inc., No. 21-cv-11686-FDS, 2021 WL 5234394, at *5 (D. Mass. Nov. 10, 2021); see Parent/Pro. Advoc. League v. City of Springfield, 934 F.3d 13, 33–34 (1st Cir. 2019). The appellants do not challenge that holding here. We therefore do not consider the association's claims in evaluating this motion.

adequate levels of healthy staff; to inspire public trust; and to prepare for an anticipated rise in COVID-19 cases.

MGB permitted employees to seek exemptions based on medical conditions and religious beliefs. The processes for seeking each type of exemption was similar, but not identical, as we describe below.

MGB allowed employees to seek medical exemptions based on conditions that the Centers for Disease Control and Prevention (CDC) established as potential medical contraindications to receiving a COVID-19 vaccine. A history of severe or immediate allergic reaction to a component of a COVID-19 vaccine is a contraindication, and a recent administration of COVID-19 monoclonal antibodies or a history of multisystem inflammatory syndrome are indications for temporary deferral of vaccination. MGB also allowed employees to seek medical exemptions based on other conditions. Employees applied for a medical exemption by having a medical provider sign an MGB-provided form. Two panels of clinicians -- one focused on occupational health and the other focused on infection control -- reviewed those forms case by case.

MGB also allowed employees to seek religious exemptions by identifying a sincerely held religious belief and explaining why that belief precluded vaccination. MGB allowed employees to use an online form to submit a written narrative of unlimited

length to explain their requests.[2]  The form asked employees to "(1) identify [their] sincerely held religious belief, practice[,] or observance and (2) explain why it prevents [them] from receiving a COVID-19 vaccine."  It also explained that employees "may be required to provide additional information or supporting documentation to support [their] request[s] for an exemption."  A committee consisting of an attorney and several trained human-resources professionals reviewed the requests.

## B. Application of the Policies to Appellants

### i. Denials of Religious Exemption Requests

We describe the eight appellants who sought and were denied religious exemptions.

**(1)** Ruben Almeida said that he could not be vaccinated because he "need[s] to glorify God at all times, by keeping [his] body as pure of any foreign substances as humanly possible" and that he "never partake[s] of any substances that could potentially harm [his] body[] [or] alter [his] mind."  MGB requested more information about whether Almeida has consistently refused to use "man-made medications" and about his history of accepting prior vaccinations.  In response, Almeida explained that he has been granted religious exemptions for flu shots, that he has used

---

[2]      The appellants complain that the online form displayed a limited number of words at one time to the user completing it. But MGB's exhibits confirm that MGB received the entirety of the appellants' explanations of their religious claims.

medications in the past "to alleviate an acute health situation," and that his religion prevents him from using a "substance [that] is detrimental to [his] health or could potentially cause harm without its benefit outweighing the risk."  MGB then denied the exemption.

**(2)** Nicholas Arno said that he could not be vaccinated because he "strongly oppose[s] vaccines of any kind that interfere with our bodies['] own immune systems that God created."  MGB requested more information about how Arno's beliefs prevent him from being vaccinated and about how he reconciles his beliefs with public statements made by leaders of his religion in support of vaccination.  Arno timely replied, repeating that "God created DNA in the body to instruct our genetic code, [and that] it was not intended to receive instruction from anything outside of that. Anything other than that would violate God's will for humanity." MGB then denied the exemption, stating that Arno had failed to provide the information it had requested by the appropriate deadline.

**(3)** Elizabeth Bigger said that "[a]ll currently available COVID 19 vaccines were developed and tested with the use of aborted fetal cells," and that she "will not allow any vaccine or medical therapy developed with aborted fetal cells to be injected into [her] body.  Benefitting in any way from an abortion, no matter when it occurred, or how the fetal cells were used, would

violate [her] beliefs as a Christian." Bigger also included supporting links. MGB told Bigger that none of the vaccines contained fetal cells and requested more information about Bigger's objections and history of vaccination. Bigger responded that "it does matter to [her] that these vaccines used fetal cells [only] in their testing and development. [She] refuse[s] to benefit from any abortion which has occurred, even if the abortion occurred decades ago." She also explained that while she has accepted vaccines that "were not manufactured with aborted fetal cells," she would refuse other vaccines so manufactured and she has refused to allow her daughter to receive such vaccines. MGB then denied the exemption.

**(4)** Natasha DiCicco said that "it is [her] sincerely held religious and spiritual belief to treat [her] body as a temple and refrain from putting anything into [her] body that [she], in good conscience, [has] moral objections or health concerns with." MGB emailed DiCicco denying the exemption because she "did not identify [her] sincerely held religious beliefs nor did [she] explain how those beliefs prevent [her] from receiving a vaccine." It also, however, offered her the opportunity to explain why her religion prevents her from being vaccinated and to provide supporting documents. DiCicco repeated and elaborated on her prior statement and provided a letter from her pastor, Reverend Ronald A. Barker of Saint Joseph Catholic Parish. Barker explained that,

- 7 -

while the Catholic Church "generally encourages" vaccination, it also teaches that an individual must make a personal decision about whether to be vaccinated in light of her own conscience. MGB again denied the exemption.

**(5)** Maria DiFronzo said that "it is immoral to be forced to receive a vaccine with even the most remote connection to abortion" and that "it is against [her] conscious [sic] to derive benefit from an aborted baby." MGB told DiFronzo that none of the vaccines contained aborted fetal cells and requested more information about DiFronzo's objections and history of vaccination. DiFronzo explained that "[her] sincere religious beliefs prevent [her] from putting anything into [her] body that [she has] moral obligation [sic] or health concerns about." She also said that "all three [COVID-19] vaccines did benefit in some way (either during research, production, or testing) from the fetal tissue of an aborted fetus." MGB then denied the exemption.

**(6)** Roberta Lancione said that because she "believe[s] life begins at conception and abortion takes the life of an innocent human being," she is "opposed to taking the Johnson and Johnson vaccine as it was developed, tested, and produced with aborted fetal cell lines." She also said that she opposes the Pfizer and Moderna vaccines, which use mRNA technology, because she "believe[s] that through God's creation [she] was made complete and that God demands that we do not change anything as synthetic

biology poses to do." Lancione explained that she had previously "never thought to question how drugs were developed by scientists and pharmaceutical companies," but that "COVID vaccine mandates [had] opened [her] eyes." MGB told Lancione that none of the vaccines contained fetal cells and requested more information about Lancione's objections and history of vaccination. Lancione then said that she objected to all three COVID-19 vaccines because the research, development, or production of all three involved cell lines from aborted fetuses. She also said that she had been granted medical exemptions from mandatory flu shots, so she had never before sought a religious exemption. MGB then denied the exemption.

**(7)** Joyce Miller said that she would "decline all attempts to access, influence and or otherwise alter any and all of [her] God-given biological material and/or biological systems which are unique, flawless and original design and craftsmanship of [her] Creator and of which [her] Creator has granted [her] sole possession, proprietorship and use of." MGB asked Miller why her religious beliefs prevent her from receiving a COVID-19 vaccine but not a flu vaccine. Miller explained that she had refused flu shots until MGB made them mandatory, that she was unaware she could seek a religious exemption from flu shots until recently, and that she received them only under duress. She also elaborated on how

- 9 -

her Catholicism and conscience informed her decision to refuse vaccination.  MGB then denied the exemption.

**(8)** Michael Saccoccio said that his "consscience [sic] is opposed to the vaccine on the ethical-moral grounds that it has been produced by the illegitimate and immoral action of using aborted human fetuses."  MGB told Saccoccio that none of the vaccines contained fetal cells and requested more information about Saccoccio's objections and reasons for not refusing a flu shot.  Saccoccio explained that "[p]artaking in a vaccine confirmed using aborted fetuses makes [him] complicit in an action that offends [his] religious faith," and that his "conscience has allowed [him] to take the traditional vaccines (those using an attenuated virus, not untested genetic therapy) in the past as these vaccines have not undergone the same morally grotesque confirmation process."  MGB then denied the exemption.

## ii. Denials of Medical Exemption Requests

Four appellants who sought religious exemptions also sought medical exemptions.  None asserted that he or she had a CDC-recognized contraindication.

**(1)** DiFronzo said she was pregnant. MGB denied her requested exemption because MGB's medical staff and the CDC recommended that pregnant people get vaccinated against COVID-19.[3]

**(2)** Lancione said that she had previously experienced allergic swelling (angioedema) after receiving a flu shot and that she was being treated for chronic lymphocytic leukemia. MGB denied her requested exemption because she did not "demonstrate a sufficient medical reason or contraindication to support an exemption." It offered to refer her to allergists at Massachusetts General Hospital or Brigham and Women's Hospital to discuss her concerns.

**(3)** Miller said that being vaccinated would cause her "severe mental anguish" and anxiety. MGB denied her requested exemption because she did not "demonstrate a sufficient medical reason or contraindication to support an exemption."

**(4)** Saccoccio said that he had anxiety and post-traumatic stress disorder. MGB denied his requested exemption because he did not "demonstrate a sufficient medical reason or contraindication to support an exemption." Saccoccio got a chance to present additional medical information to MGB following that decision, but the committee maintained its denial.

---

[3] MGB had previously said that it would offer temporary exemptions during an employee's pregnancy. After the CDC changed its guidance on vaccinations during pregnancy, MGB changed its policy.

- 11 -

After MGB denied the appellants' exemption requests, it put the appellants on unpaid leave. At least one appellant has since resigned and at least one chose to get vaccinated. MGB later terminated the employment of all of the non-vaccinated appellants.

## C. Procedural History

Dissatisfied with their individual exemption decisions, the appellants filed suit against MGB in the District of Massachusetts. The appellants asserted causes of action for failure to make reasonable accommodations and failure to engage in an interactive process under the ADA, for religious discrimination and failure to engage in an interactive process under Title VII, and for unlawful retaliation under both statutes. They did not challenge the vaccine policy itself.

The district court orally denied the appellants' motion for a preliminary injunction following two motion hearings and extensive briefing. Days later, it memorialized that decision in a well-reasoned forty-one page opinion. Together Emps. v. Mass Gen. Brigham Inc., No. 21-cv-11686-FDS, 2021 WL 5234394 (D. Mass. Nov. 10, 2021).

The district court held that the plaintiffs were unlikely to succeed on the merits of any of their claims. As to the ADA claims, the district court held that the appellants could likely not show that they were disabled under the ADA, id. at *6-7, that they were qualified to do their jobs because they pose a

- 12 -

direct threat to patients, id. at *7-9, that their requested accommodations were reasonable, id. at *9-11, that they could defeat MGB's assertion of undue hardship, id. at *11-14, and that the exemption process was legally inadequate, id. at *14-15. As to the Title VII claims, the district court assumed that the plaintiffs had demonstrated sincere religious beliefs that prevented them from taking the COVID-19 vaccine, and held that the appellants could likely not show that they could defeat MGB's assertion of undue hardship, nor that the exemption process was legally inadequate. Id. at 15-18. As to both categories of claims, the district court held that the appellants had not provided sufficient evidence that they had exhausted their administrative remedies or made "a showing of irreparable injury sufficient in kind and degree to justify the disruption of the prescribed administrative process." Id. at *19 (quoting Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983)). Finally, as to the retaliation claims, the district court held that the appellants could likely not establish a causal connection between their protected activity and any adverse employment action. Id. at *20.

The district court also held that the appellants were unlikely to demonstrate irreparable harm, that the balance of the equities favored them, or that the public interest supported an injunction. Id. at *20-21.

As said, the matter before us concerns a motion for injunction pending interlocutory appeal of that denial of a preliminary injunction.  See Fed. R. App. P. 8(a).

## II. Analysis

To be entitled to an injunction pending appeal, the appellants must make a strong showing that they are likely to succeed on the merits, that they will be irreparably injured absent emergency relief, that the balance of the equities favors them, and that an injunction is in the public interest.  Respect Me. PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010).  The first two factors are the most important.  Cf. Nken v. Holder, 556 U.S. 418, 434 (2009).  If the appellants cannot demonstrate irreparable harm, we need not discuss the other factors.  See Matos ex rel. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004).

A preliminary injunction preserves the court's ability to grant final relief.  See 11A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2948.1 (3d ed. Apr. 2021 update).  We require a showing of irreparable harm before granting a preliminary injunction since that harm would "impair the court's ability to grant an effective remedy" following a decision on the merits.  See id.  Because adequate legal remedies foreclose injunctive relief, the appellants cannot demonstrate irreparable harm without showing that they have inadequate remedies at law.  See Doe v. Mills, 16 F.4th 20, 36 (1st Cir. 2021) (citing

- 14 -

Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1019 (1984)). Here, they cannot make that showing, which ends our inquiry.

"When litigants seek to enjoin termination of employment, money damages ordinarily provide an appropriate remedy." Id. To obtain an injunction, therefore, the appellants must show a "genuinely extraordinary situation." Sampson v. Murray, 415 U.S. 61, 92 n.68 (1974). "[I]nsufficiency of savings or difficulties in immediately obtaining other employment -- external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself -- will not support a finding of irreparable injury, however severely they may affect a particular individual." Id. That rule governs both the Title VII and ADA claims because they both arise from the termination of employment.

All the harms the appellants point to fall within the category of "external factors common to most discharged employees." They say that unpaid leave or discharge will deprive them of their salaries and health insurance. Nothing about those consequences is unusual. The appellants also allege that they will face psychological injuries if they are terminated. Our precedents also foreclose that argument. "[T]he fact that an employee may be psychologically troubled by an adverse job action does not usually constitute irreparable injury warranting injunctive relief." DeNovellis v. Shalala, 135 F.3d 58, 64 (1st

Cir. 1998).  Money damages would adequately resolve all of the alleged harms.[4]  Moreover, as the deadline for being vaccinated has passed, the appellants cannot point to an "impossible choice" as a special factor here; they have already made their choices.[5]

To the extent the appellants argue that MGB's actions impair their religious liberty rights under the Constitution, that argument fails.  As appellants concede, MGB is not a state actor governed by the First Amendment.  If MBG's actions turn out to be unlawful, they are remediable through money damages.

## III. Conclusion

The appellants' motion for injunction pending appeal is <u>denied</u>.

---

[4]    That the appellants did not seek money damages in their complaint is of no moment.  They may not create irreparable harm through artful pleading.

[5]    We note as well that both the weakness of the appellants' irreparable harm arguments and the district court's factual findings underlying its conclusion that the appellants have not shown irreparable harm undermine the appellants' likelihood of success on the merits.  To be entitled to an injunction, the appellants must show that their legal remedies are inadequate. The district court's factual findings, which again will be reviewed for clear error, impede the appellants' ability to make that showing.