In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-1040

PAUL HALCZENKO, Doctor, on behalf of himself and all those similarly situated,

*Plaintiff-Appellant*,

*v.*

ASCENSION HEALTH, INC., *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-02816 — **James P. Hanlon**, *Judge*.

———————————

ARGUED MAY 31, 2022 — DECIDED JUNE 23, 2022

———————————

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Dr. Paul Halczenko lost his position as a pediatric critical care specialist at St. Vincent Hospital in Indianapolis, Indiana, for failing to comply with the hospital's vaccine mandate. He objects to being vaccinated on religious grounds. Dr. Halczenko sued under Title VII for religious discrimination and sought a preliminary injunction requiring the hospital to reinstate him to its pediatric intensive

care unit. The district court denied the motion, concluding not only that Dr. Halczenko had failed to show irreparable injury from losing his job, but also that Title VII afforded him adequate remedies other than a preliminary injunction compelling St. Vincent to reinstate an unvaccinated physician to its pediatric ICU. We affirm.

**I**

A

Owned by Ascension Health, Inc., St. Vincent Hospital, like many organizations, adopted a COVID-19 vaccine requirement in the summer of 2021. Employees had until November 12, 2021 to get vaccinated unless they received a medical or religious exemption. In reviewing requests for exemptions, St. Vincent and Ascension considered, among other factors, the employee's position and amount of contact with others, the current health and safety risk posed by COVID, and the cost and effectiveness of other safety protocols.

Until his suspension and ultimate termination, Dr. Halczenko treated gravely ill children, including those suffering from or at risk of organ failure. He did this within a pediatric ICU, and St. Vincent operates one of only three such units in Indiana. St. Vincent denied Dr. Halczenko's request for religious accommodation on the ground that "providing an exemption to a Pediatric Intensivist working with acutely ill pediatric patients poses more than a de minim[i]s burden to the hospital because the vaccine provides an additional level of protection in mitigating the risk associated with COVID."

Dr. Halczenko and four other St. Vincent employees, including two pediatric ICU nurses, responded by filing an

EEOC complaint alleging religious discrimination. All five were suspended without pay in November 2021, and St. Vincent terminated Dr. Halczenko's employment in January 2022. Since losing his job, Dr. Halczenko has tried to find similar work at other hospitals. He attributes his lack of success to a non-compete agreement he has with St. Vincent, his preference not to move his family, and otherwise limited demand at other hospitals for an unvaccinated physician in his area of specialized care.

In November 2021 Dr. Halczenko and the four other St. Vincent employees filed a putative class action seeking injunctive relief and damages, alleging St. Vincent violated Title VII by denying their religious exemption requests. St. Vincent subsequently afforded the other named plaintiffs—a nurse practitioner and three nurses, including two in the pediatric ICU—religious accommodations. The record does not tell us why or how St. Vincent differentiated between Dr. Halczenko and these other employees. Regardless, Dr. Halczenko was the only named party left seeking injunctive relief.

B

The district court denied preliminary relief, concluding that Dr. Halczenko had shown neither irreparable harm nor an inadequate remedy at law. Relying on *E. St. Louis Laborers' Loc. 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005), the district court explained that "a permanent loss of employment, standing alone, does not equate to irreparable harm." And "the possibility of reinstatement or back-pay at the end of litigation," the court added, "is usually enough to show that preliminary injunctive relief is unnecessary."

As to irreparable harm, Dr. Halczenko staked out a stark litigating position in the district court. He submitted a sworn declaration stating that his professional skills would dull so rapidly and so extensively during any period of extended leave that within six months of being suspended—that is, by May 12, 2022—he would no longer be fit to work in a pediatric ICU. He therefore insisted that court-ordered reinstatement to his position at St. Vincent was the only way to avoid this deterioration of skills.

We cannot discern why Dr. Halczenko seemed to chisel a specific date into stone. After pressing the same point in his appellate briefs, his counsel backed off the position at oral argument (held on May 31, 2022) when we observed that he was essentially asking a federal court to order the reinstatement of a physician who, by his own admission, had lost his competency to practice.

Regardless, the district court determined that Dr. Halczenko's alleged harm was speculative. The court was "not convinced that without immediate injunctive relief," Dr. Halczenko—a highly trained physician with years of practice experience—would be unable to continue his career as a pediatric ICU physician, even if doing so required a touch of training to freshen his skills. The district court also had trouble accepting that Dr. Halczenko, though unvaccinated, was unable to secure any other work as a physician during the pendency of the litigation.

Dr. Halczenko now appeals the denial of his motion for a preliminary injunction.

## II

### A

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Dr. Halczenko proceeds under Title VII of the Civil Rights Act of 1964, which prohibits an employer from taking an adverse employment action because of a protected ground, including religion. See 42 U.S.C. § 2000e-2(a). This religious protection has a limit, however. An employer need not grant an accommodation if it can demonstrate that doing so would pose an "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

Title VII provides a range of remedies to successful plaintiffs, including reinstatement, back pay, front pay, compensatory damages, and "any other equitable relief as the court deems appropriate." *Id.* §§ 1981a(b)(2); 2000e-5(g)(1). So too may plaintiffs receive punitive damages upon a finding that an employer engaged in a discriminatory practice with malice or reckless indifference. See *id.* § 1981a(b)(1). Given this broad remedial scheme, "an insufficiency in savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).

B

The district court was right to conclude that none of Dr. Halczenko's alleged harms are irreparable.

*First*, Dr. Halczenko continues to contend that because he is only able to practice his pediatric critical care skills in a hospital setting, he will "rapidly lose his skills to the point that he will be unable to practice as a pediatric critical care specialist" if not reinstated by May 2022. Despite these contentions, Dr. Halczenko did not move to expedite his appeal. And now, of course, we are beyond his self-assessed May 2022 deadline. Taking Dr. Halczenko at his word, an injunction now would do nothing to prevent this alleged harm. See *Winter*, 555 U.S. at 20 (requiring that a plaintiff be "likely to suffer irreparable harm *in the absence of preliminary relief*") (emphasis added). Even more, though, and like the district court, we have a hard time seeing this alleged harm as anything but speculative— too much so to warrant the extraordinary remedy of preliminary injunctive relief.

To be sure, we have recognized that "there might be some basis for a finding of irreparable injury" for "a deterioration in professional skills pending the outcome of the litigation." *Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*, 684 F.2d 1346, 1350 (7th Cir. 1982). But we have yet to encounter a fact pattern where a plaintiff made that showing. Rather, we have consistently concluded that such alleged harm is too speculative to be irreparable. See, *e.g., id.* ("[P]laintiff has neither alleged nor proven an atrophy in her skills."); *Bedrossian v. Northwestern Mem'l Hosp.*, 409 F.3d 840, 846 (7th Cir. 2005) ("We have consistently held that physicians are awarded no special treatment … even when, like Bedrossian, they assert that termination will cause a 'deterioration in skills.'").

Just so here. Dr. Halczenko has not proven a deterioration in skills that could only be prevented by the issuance of an injunction. Speculation about how his skills may deteriorate during the pendency of the litigation is insufficient, especially when Dr. Halczenko's contention comes without regard to his extensive training and past experience or an explanation for why a training course or two would fail to position him to resume active practice in a pediatric ICU.

Even if aspects of this alleged harm somehow came to pass, Congress has provided adequate remedies in Title VII such that a preliminary injunction is not warranted. Title VII itself provides courts with substantial equitable authority to craft remedial measures, including ordering training programs. See, *e.g.*, *Patzer v. Bd. of Regents of Univ. of Wisconsin Sys.*, 763 F.2d 851, 854 n.2 (7th Cir. 1985) ("Title VII authorizes any equitable remedies the court deems appropriate."). And if Dr. Halczenko's skills have so dulled that he must change to a less lucrative specialty, "[l]ost future earning capacity is a nonpecuniary injury for which plaintiffs may be compensated under Title VII." *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953 (7th Cir. 1998).

*Second*, Dr. Halczenko contends that he will be irreparably harmed because he faces an unusually difficult job search. The "CMS vaccine mandate," he advances, "puts legal and economic pressure on healthcare providers to only hire vaccinated individuals." Perhaps. But career jeopardy alone does not amount to irreparable harm. See, *e.g.*, *E. St. Louis*, 414 F.3d at 704 ("A permanent loss of employment, standing alone, does not equate to irreparable harm."); *Dos Santos*, 684 F.2d at 1349 ("Under these circumstances it is irrelevant that plaintiff

claims she may be unable to find other employment as an anesthesiologist in the Chicago area.").

*Third*, Dr. Halczenko urges us to adopt a presumption of irreparable harm in Title VII religious discrimination cases, much like he sees the law do with Free Exercise Clause claims. See, *e.g.*, *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004). This position likewise misses the mark. "[U]nless the statute under which he is suing excuses a showing of irreparable harm," "[i]n every case in which the plaintiff wants a preliminary injunction he must show that he has 'no adequate remedy at law,' and … that he will suffer 'irreparable harm' if the preliminary injunction is not granted." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Unlike statutes such as the Lanham Act, see 15 U.S.C. § 1116(a), Title VII does not excuse a showing of irreparable harm. Our case law is clear on this point. See, *e.g.*, *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 477–78 (7th Cir. 2001).

The Fifth Circuit's non-precedential decision in *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), provides Dr. Halczenko no refuge. *Sambrano* involved United Airlines employees given the choice of receiving a COVID vaccine or being placed on indefinite unpaid leave. The Fifth Circuit concluded that there existed an irreparable harm that was "ongoing and cannot be remedied later: [the employees] are actively being coerced to violate their religious convictions." *Id.* at *6. Here, however, St. Vincent fired Dr. Halczenko. He has therefore not suffered a similar harm. Indeed, the *Sambrano* court took care to recognize that if United had fired the plaintiffs, it "would preclude injunctive relief." *Id.* at *7; see also *Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) ("Moreover, as the deadline

for being vaccinated has passed, the appellants cannot point to an 'impossible choice' as a special factor here; they have already made their choices.").

C

Because Dr. Halczenko has not shown an irreparable harm or that legal remedies available under Title VII would be inadequate, we need not address the other injunction factors. See *Winter*, 555 U.S. at 31–33. We nevertheless pause to comment that, although the record before us is thin on the point, it does not support an inference that St. Vincent's actions were motivated by an animus towards religion. Rather, it seems St. Vincent ultimately chose to accommodate around 300 workers who had applied for religious exemptions, including two PICU nurses who joined Dr. Halczenko in bringing this lawsuit. That it chose not to do so for Dr. Halczenko raises questions about the reasons for the differential treatment. But it does not suggest an institutional hostility towards religion—at least not on the record before us.

Nothing in today's opinion precludes Dr. Halczenko from pursuing the point further in the district court. And with litigation being a two-way street, Ascension and St. Vincent will be able to offer their own explanation for affording nurses religious exemptions but choosing to terminate Dr. Halczenko.

For these reasons, we AFFIRM.